REPUBLIC OF FRANCE, RESPONDENT, v. LEHIGH VALLEY RAILROAD COMPANY, APPELLANT.

Submitted March 27, 1922—Decided June 19, 1922.

1. Neither the congressional legislation relating to the transportation of explosives nor the regulations of the interstate commerce commission, based upon that statute, attempt to fix the entire measure or degree of care to be exercised by the common carrier in the care and custody of high explosives, and were not intended to absolve transportation companies from care commensurate with the risk of danger which might arise from concentrating a large quantity of highly explosive matter in close proximity to densely populated cities.
2. Where the injury complained of is the result of the joint negligence of the defendant and a third party, the defendant is liable where nothing is shown to have broken the chain of causation which linked its wrongful act with the injury suffered by the plaintiff.

On appeal from the Supreme Court, whose opinion is reported in 96 *N. J. L.* 25.

For the appellant, *George S. Hobart, Nash Rockwood, Charles T. Lark, Richard W. Barrett* and *Edgar H. Boles* (of the New York bar).

For the respondent, *Maximilian M. Stallman* and *Jerome T. Congleton.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This is one of a series of cases which have been brought in the courts of this state to recover from the defendant compensation for the destruction of property on the night of July 30th, 1916, resulting from the blowing up of a number of cars loaded with high explosives which were stored on the company's dock at Communipaw, and a like explosion occurring upon a vessel, known as Johnson 17, moored at this dock and which was being loaded with ammunition from these cars. The trial of the present

suit resulted in a verdict in favor of the plaintiff, and from the judgment entered on that verdict the defendant appeals.

The basis of the plaintiff's claim was that these explosions were the direct result of the negligence of the company and its agents. The defendant at the trial contended that the only legal negligence which could be imputed to it was a violation of the regulations which had been prescribed by the interstate commerce commission with relation to the handling of explosives, and that no other ground of negligence on its part should be submitted to the jury. The court ruled against the defendant upon this point and permitted proof to be introduced tending to show that the defendant had failed to use other precautions which were reasonably necessary to protect against fire and explosion in addition to those required by the interstate commerce commission.

The first ground upon which we are asked to reverse the judgment relates to the admission of this evidence and is thus stated in the brief of counsel: "The congress of the United States having enacted legislation relating to the transportation of explosives and other dangerous articles in interstate and foreign commerce and regulations having been issued by the interstate commerce commission pursuant to such legislation, the duty of the defendant in the premises must be determined solely by reference to such legislation and regulations, as the definite measure of its duty or as the standard of its conduct; and it was therefore error on the part of the trial judge to permit the jury to take into consideration any other measure or standard in determining the question of the defendant's negligence." The same question was submitted to us for consideration in the case of *Howell v. Lehigh Valley Railroad Co.*, 94 *N. J. L.* 213, and we then held that neither the statutory provision appealed to nor the regulations of the interstate commerce commission based upon that statute attempted to fix the entire measure or degree of care to be exercised by the common carrier in the care and custody of high explosives, and were not intended to absolve transportation companies from care commensurate with the risk of danger which might arise from concentrating

a large quantity of highly explosive matter in close proximity to densely populated cities. It is conceded by counsel that ordinarily our earlier decision should control us in our determination of the present case; but it is argued that since its rendition the Supreme Court of the United States, in some recent opinions dealing with the exclusive application of federal statutes and regulations made thereunder, has at least thrown doubt upon the soundness of our adjudication in the Howell case and that we ought therefore to reconsider our earlier holding. We have examined the decisions referred to and cited in the brief of counsel and find nothing in them which supports the idea that they are out of harmony with the view which we have already expressed; and that this is so would seem to be indicated by the fact that an application by the present appellant to the Supreme Court of the United States to allow a *certiorari* for the purpose of reviewing our decision of the Howell case was denied by that tribunal. 253 *U. S.* 482.

The next contention of the appellant is thus stated: "Assuming that the jury had the right to base a verdict against the defendant upon any ground of negligence other than a violation of the regulations prescribed by the interstate commerce commission, the evidence failed to show any such negligence, or that the same, if shown, was the proximate cause of the damage sustained by the plaintiff. But even if there was any such negligence with respect to some one or more of the matters alleged in the complaint and submitted to the jury (other than a violation of said regulations) the evidence failed to show negligence with respect to all of such matters and it was therefore error to permit the jury to base a verdict upon a finding of negligence on the part of the defendant with respect to at least some of the matters thus submitted." Counsel for the appellant content themselves with a mere statement of the point, without any discussion as to its merits, explaining their failure in this regard by saying that the points are substantially similar to certain of the grounds of appeal which were argued in previous cases decided by us adversely to the defendant's claim. The cases

referred to are *New Jersey Fidelity, &c., Co.* v. *Lehigh Valley Railroad Co.,* 92 *N. J. L.* 467; *Howell* v. *Lehigh Valley Railroad Co., supra; Metropolitan Casualty Insurance Co.* v. *Lehigh Valley Railroad Co.,* 94 *Id.* 236; *Royal Indemnity Co. et al.* v. *Lehigh Valley Railroad Co., Id.* 260. The view which we hold with relation to the matters presented by this point are fully exploited by us in our opinions in the cited cases, and we are content to rest our conclusions with relation to the soundness of this ground of appeal upon those opinions.

The next ground of reversal (still quoting from the brief of appellant's counsel) is that "the evidence failed to show a violation of any of the interstate regulations pleaded in the complaint or submitted to the consideration of the jury in the charge, or that any such alleged violation thereof was the proximate cause of damage to the plaintiff. It was therefore error to refuse to withdraw some one or more of these regulations from the consideration of the jury in accordance with the defendant's request; and it was likewise error to permit the jury to base a verdict upon the conclusion that the defendant had violated any one or more of these regulations, as, in any event, the evidence failed to show a violation of all of such regulations, even if it may have shown a violation of one or more thereof." This ground of reversal, as it seems to us, embraces a number of disconnected matters. The first point is that the evidence failed to show a violation of any of the interstate regulations pleaded in the complaint or submitted to the consideration of the jury. It is enough to say in disposing of this contention that our examination of the proofs satisfies us that it is contrary to the fact. The next point is that, if such violation was proved, it was not shown to be the proximate cause of the damage to the plaintiff. Not only was there testimony which, if believed by the jury, would support the conclusion that there had been violations of some of the interstate commerce regulations by the defendant, but there was also proof in the case which made it a question for the jury to determine whether such violations were the proximate cause of damage to the plaintiff. Conse-

quently, it was not error for the trial court to refuse to withdraw from the jury certain of these regulations, the violations of which were in dispute, and so prevent them from determining whether, in case they found such violations, they were satisfied that they were the proximate cause of the plaintiff's damage. Moreover, all of these regulations were put in evidence by the defendant itself, and, having done this and permitted them to remain in until the close of the case, the trial court very properly refused to permit them then to be withdrawn. The contention that it was error to permit the jury to base a verdict upon the conclusion that the defendant had violated any one or more of these violations unless the proof showed that they had violated each and every one of them is too unsubstantial to justify discussion.

The last ground of reversal argued before us is that "there was error in the charge to the jury and in the refusal to charge certain requests submitted by the defendant relative to the federal anchorage regulations and the admitted violation thereof by the barges attached to the defendant's pier, particularly Johnson barge No. 17, at the time of the fire and explosion." This point is apparently based upon the fact that the Johnson barge No. 17 had been permitted to remain moored to the dock during the night of the explosion, contrary to the federal anchorage regulations; that the persons in charge of this barge, being wrong-doers, were solely responsible for the explosion which occurred upon it, and that this explosion, as shown by the proofs, was the first to occur and was therefore the primary cause of the destruction of plaintiff's property, and that consequently the owners of the barge, and not the defendant company, are answerable for the loss sustained by the plaintiff. The jury might have found from the testimony that this barge had been moored to the pier for the purpose of taking on a load of explosives; that before it was entirely loaded the time for shutting down work occurred, and that the barge was left there until the following morning for the purpose of having the loading then completed. Apparently this is not a situation which is dealt with by the anchorage regulations. But, assuming that the

leaving of this barge, moored to the dock over night, was a violation of those regulations by the parties in charge of the barge, we think it plain that the defendant company is chargeable with knowledge of this violation, and was itself negligent in not using reasonable effort to terminate it; and so, even if it be true that the original explosion occurred on this barge, the proofs justified the jury in finding that the loss of the plaintiff was the direct result of the negligence of the railroad company in permitting, by its non-action, this barge to remain in its dangerous position in violation of law. If, on the other hand, as the plaintiff claims, the testimony indicates that the original explosion occurred on the dock and was the producing cause of the explosion on Johnson barge No. 17, and it be true that the destruction of plaintiff's property was due to the latter explosion, the defendant would be liable, notwithstanding the fact that the barge was moored to the dock in violation of the anchorage regulations, if, in fact, the original explosion was the result of its (defendant's) negligence; and the reason is that, as the presence of the barge alongside the dock was due to the joint negligence of the owners thereof and of the defendant company, there was nothing to break the chain of causation which linked the wrong complained of by the plaintiff with the injury suffered by it. *Delaware, Lackawanna and Western Railroad Co.* v. *Salmon,* 39 *N. J. L.* 299.

We conclude, therefore, that the judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ.  15.

*For reversal*—None.