## PETER POLIN v. ST. PAUL UNION DEPOT COMPANY AND ANOTHER.[1]

### May 29, 1924.

### No. 23,847.

**Questions for jury.**
1. The evidence was sufficient to make the questions as to negligence, contributory negligence and the purpose for which plaintiff went to defendant's railway station, questions for the jury.

**Physician forbidden to disclose information acquired professionally.**
2. The statute forbids a physician from disclosing without the consent of his patient, information acquired in his professional capacity and necessary to enable him to act in that capacity. .

[1] Reported in 199 N. W. 87.

**Privilege of patient not waived by his own testimony.**

3. Plaintiff did not waive this privilege by bringing an action to recover for injuries, and testifying at the trial as to the injuries and that a broken bone in his leg had been set and the leg placed in a cast by the physician.

**Equal division of court as to misconduct of counsel.**

4. The qualified members of the court are equally divided as to whether the improper remarks of plaintiff's counsel in his argument to the jury constituted such misconduct that a new trial should be granted, and therefore the decision of the trial court stands.

Action in the district court for Ramsey county to recover $11,000. The case was tried before Bechhoefer, J., who when plaintiff rested denied defendants' motion to dismiss the action and at the close of the testimony denied their motion for a directed verdict, and a jury which returned a verdict for $4,519. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*F. W. Root, C. O. Newcomb* and *A. C. Erdall,* for appellants.
*McNamara & Seward,* for respondent.

TAYLOR, C.

Action for personal injuries in which plaintiff had a verdict, and defendants appeal from an order denying their alternative motion for judgment non obstante or a new trial.

On the afternoon of March 16, 1922, plaintiff applied to the Federal Employment Agency in the city of St. Paul for a job and was informed that a Mr. Heberle at Lake Elmo, a few miles from the city, had work for a man and his wife on a farm. He was given a card containing the name and address. He went home, informed his wife, and shortly before 7 o'clock in the evening went to the Union Station to take a train for Lake Elmo. While crossing the tracks at the station looking for a Lake Elmo train, he was struck by a baggage car which was being pushed in front of an engine and sustained the injuries for which he seeks to recover.

1. Whether plaintiff was at the station for the purpose of taking a train as he claimed or was there for some improper purpose

and a trespasser on the premises as claimed by defendants; whether defendants were chargeable with negligence which resulted in the injury; and whether plaintiff was guilty of contributory negligence, were questions which the ·jury resolved in plaintiff's favor. The evidence made these issues questions for the jury and their conclusions must be accepted as correct.

2. Defendants contend that the court erred in excluding the testimony of Doctor Kelly, the physician who treated plaintiff for his injuries. Section 8375, G. S. 1913, forbids a physician or surgeon from disclosing, without the consent of his patient, any information which he acquired while acting in his professional capacity, and which was necessary to enable him to act in that capacity. Defendants insist that plaintiff waived the right to invoke this statute by bringing an action to recover damages for the injuries treated by the physician, and by testifying concerning such injuries and the treatment given. The legislature has not seen fit to say that such acts shall operate as a waiver. The authorities are not in harmony. They are collated in notes found in 13 Ann. Cas. 945, and Ann. Cas. 1915A, 438. This court, in accordance with the weight of authority, has adopted the rule that bringing an action, unless it be against the physician himself for malpractice, or testifying concerning the injuries sustained and the treatment received, unless such testimony relates to communications made to the physician or questions the propriety of his treatment, is not a waiver of the privilege. Marfia v. Great North. Ry. Co. 124 Minn. 466, 145 N. W. 385; Burke v. Chicago & N. W. Ry. Co. 131 Minn. 209, 154 N. W. 960. See also Green v. Town of Nebagamain, 113 Wis. 508, 89 N. W. 520; Cohodes v. Menominee & M. L. & T. Co. 149 Wis. 308, 135 N. W. 879; May v. N. P. Ry. Co. 32 Mont. 522, 81 Pac. 328; 4 Ann. Cas. 605; Noelle v. Hoquiam L. & S. Co. 47 Wash. 519, 92 Pac. 372.

It is undisputed that plaintiff sustained a "Potts" fracture of the ankle and that he made a good recovery. He testified as to his injuries. He also testified that the doctor gave him gas and set the broken bones; that his leg was placed in a plaster of Paris cast; that some weeks later this cast was removed and a smaller

one substituted; that some weeks later the smaller cast was removed, and that he went to the doctor a few times thereafter who examined his leg but did nothing further. This is the substance of his testimony concerning the treatment received. There was no claim that the treatment was either improper or unskilful.

3. Dr. Kelly was the surgeon of the railway company. He and Dr. Sweeney made an examination of plaintiff at the trial. Dr. Sweeney testified as an expert concerning plaintiff's condition as the result of his injuries. Dr. Kelly frankly admitted that he would be unable to testify as to plaintiff's condition from the information obtained at this examination disassociated from the information obtained while treating plaintiff as a patient, and his testimony was excluded. We see no error in this ruling.

4. Defendants insist that they are entitled to a new trial on account of the misconduct of plaintiff's counsel in his argument to the jury. This presents the serious question in the case. Plaintiff admitted, on cross-examination, that he had been convicted of larceny and served a term in the State Prison. In his address to the jury, plaintiff's counsel excoriated defendants for bringing out the fact of this conviction. This portion of his address covers several printed pages from which we excerpt a few passages:

"Let him who is without sin cast the first stone * * *. If that could be repeated today in this court room * * * how many stones would be cast by these two corporations at this young man on account of his seven years ago past- Have they ever sinned? * * *

"He was getting to a point, gentlemen, where he could look his neighbors in the face and feel that he was again a respected citizen of the community, and he had about acquired that position in society, when along comes the Chicago, Milwaukee and St. Paul Railway Company and the St. Paul Union Depot Company, and for the purpose, as I said before, not of telling you how this accident happened, or why it happened, but for the purpose of poisoning your mind and asking you to disregard the facts, and bring again upon this man the disgrace of that old offense. They had

no heart, no soul, no feeling; there is no blood circulating in the veins of these corporations. * * *

"Now, as I said, they have no regard, these companies haven't, for what suffering it may cause this man and his family, throwing up this past history of his. They can't feel like human beings. * * * Well, I thought so, and that is all I said. They are not even animals. They have feeling too."

Characterizing defendants in this manner constituted legal misconduct, Smith v. Great North. Ry. Co. 133 Minn. 192, 158 N. W. 46, and the court should have taken effective action to check it and rule it out as improper. However, the trial court, which is in a better position than this court to determine whether it influenced the jury prejudicially, was of opinion that it did not.

The defendants took the position at the trial and in this court that plaintiff's story was fabricated and unbelievable. No train left for Lake Elmo at or near the time that the accident happened, and defendants claim and doubtless argued to the jury that plaintiff was not at the station for the purpose of taking passage on a train but for the purpose of pilfering from cars. To what extent the argument for defendants may have provoked the disparaging remarks of counsel for plaintiff we do not know.

Justice Stone, having formerly been of counsel for one of the parties, took no part. Justices Holt and Quinn are of opinion that a new trial should be granted for the misconduct. The Chief Justice and Justice Dibell are of opinion that the case falls within the rule applied in State v. Hass, 147 Minn. 269, 180 N. W. 94, and that a new trial should not be granted by this court under the circumstances. The qualified members of the court being equally divided, it follows that the decision of the trial court stands, and the order appealed from must be and is affirmed.

Affirmed.